CHARLES A. DERLIN ET AL.

*vs.*

ANNA CATHERINE DERLIN ET AL.

*Widow's Thirds in Realty—Audit—Right to Except—Appeal—Attorney and Client—Fiduciary Relation.*

Under Acts 1916, ch. 325, taken in connection with a clause in decedent's will recognizing the legal rights of his widow to dower and thirds, the widow was entitled to one-third of the real estate of which decedent died seised.　　　　p. 355

The children of one interested in a fund are not, by reason of their interest in the ultimate distribution of her property, entitled to except to an audit by which the fund is distributed.
　　　　p. 358

Persons who would, by an audit, receive more than they are entitled to, have no standing to except to the audit.　　p. 358

Persons who would, by an audit, based on a family agreement into which they have entered, receive more than they would otherwise be entitled to, are entitled to appeal from a decree sustaining exceptions to the audit and declaring the agreement null and void.　　　　p. 358

An agreement made by a widow with her husband's children by a former marriage, by which she relinquished a portion of her legal share in his estate, and which she executed with the approval of, and after constant consultation with, her attorney, whose wife was one of the children of the former marriage and thus one of the beneficiaries under the agreement, *held* to be properly set aside.　　　　pp. 358-363

An attorney at law, who has once been retained and received the confidence of a client, is thereafter disqualified from acting for any other person adversely interested in the same general matter, however slight such adverse interest may be, and it is immaterial that the intention and motive of the attorney are honest.　　　　p. 364

*Decided January 11th, 1923.*

Appeal from the Circuit Court of Baltimore City (CAR-ROLL T. BOND, J.).

Bill by Anna Catherine Derlin, widow of August Derlin, deceased, against Charles A. Derlin and others, for a sale of certain property. From a decree sustaining exceptions to an auditor's account distributing the proceeds of sale, and declaring a certain agreement void, Charles A. Derlin and others appeal. Affirmed.

The cause was argued before BOYD, C. J., URNER, ADKINS, and OFFUTT, JJ.

*Benjamin H. McKindless,* for the appellants.

*Eldridge Hood Young* and *R. Walter Crothers,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

August Derlin died in June, 1921, leaving a widow, Anna Catherine Derlin, and eleven children. He was married three times and six of the children were by his first wife and five by the third—there being none by his second wife. He left a last will and testament dated the 19th of April, 1907, and a codicil to it dated June 14th, 1915. By the second clause of his will he gave all his household and kitchen furniture to his wife, and the third and fourth clauses are as follows:

"Third: I recognize the legal rights of my said wife, Anna Catherine Derlin, to dower and thirds in my estate and the disposition of my estate hereinafter made is to be subject to her said dower and thirds and such other legal rights as she might have had I died intestate.

"Fourth: All the rest and residue of my estate, real, personal and mixed, after deducting my said

wife's dower and thirds, I give, devise and bequeath
to all such of my children, whether by my first or
third marriage (I have no child by my second mar-
riage) as shall survive me, to be divided between them
equally share and share alike *per capita,* the children
of any child then deceased to take the parent's share
*per stirpes."*

By clause six, he authorized his executrix at any time,
with the concurrence of at least a majority of such of his
children as shall then be adults, to sell at either public or
private sale, on such terms as to them shall seem meet and
just, any and every part of his real and leasehold property, or
to lease the same and to divide the proceeds of every such sale
among the parties interested in the property sold. He ap-
pointed his wife executrix of his will. By the codicil he left
to three of his daughters by his first wife $1,000 each, stating
that he had made absolute gifts of leasehold property to the
other three, and left his residence to his wife.

A bill of complaint was filed by the executrix in the Circuit
Court for Baltimore City, setting out that a majority of the
adult children had requested a sale at public auction of all
the fee simple and leasehold properties of which the testator
died seised and possessed, and prayed, amongst other things,
that the court assume jurisdiction over the sale of the real
and leasehold properties of the estate of August Derlin and
over the distribution of the proceeds of sales, etc. All of the
children were adults excepting one by the third wife. Nine
of them answered, giving their assent to the sales, so that
the proceeds thereof might be divided among the parties
entitled, in accordance with the terms of the will and codicil,
and the minor child answered by a guardian *ad litem* in the
usual formal way. An order was passed by the court direct-
ing the executrix to sell the real and leasehold properties
mentioned in the bill of complaint, under the terms and in
pursuance of the powers set forth in the will, fixing the time
of advertisement of sale at public auction, and that she dis-

tribute the proceeds of sale to the parties entitled thereto under the jurisdiction of that court.

The executrix reported sales at public auction of fee simple and leasehold properties amounting to $58,565—all except one leasehold property being sold, which, by a later order, with the assent of a majority of the adult children, was awarded to the widow as part of her distributive share, in addition to a mortgage and some shares of stock named. The papers were referred to an auditor of the court, and a report was filed by him March 20th, 1922. The only questions presented to us are by an appeal from a decree sustaining exceptions to the audit, and declaring an agreement of March 27th, 1922, null and void and of no effect.

The bill of complaint was filed by Mr. McKindless, solicitor for Mrs. Derlin, executrix, and a number of other papers were also filed by him. He is the husband of one of the daughters by the first wife, and he represented in the lower court the children of the first wife, who are now appellants in this Court. In addition to the provisions in the will for the widow, the testator had in his lifetime purchased a number of properties which were conveyed to his wife and himself as tenants by the entireties—they being of the approximate value of $25,000, as stated in the agreement referred to. Some discussion arose as to the interest in the real estate the widow would have—whether a tenth, under the rule of court, in lieu of dower, or one-third under the Act of 1916, chap. 325, now in article 46 of volume 4 of the Code. The case of *Key* v. *Key,* 134 Md. 418, seems to be a sufficient authority on the construction of that act, if any be necessary, to dispose of the question, taken in connection with clause 3 of the will quoted above, and Mrs. Derlin was entitled to one-third of the real estate of which her husband died seised. Mr. McKindless, according to his evidence and what can be fairly ascertained from that of the other witnesses, informed Mrs. Derlin that she was entitled to one-third, but as the children by the first wife thought she and, probably eventually her children, would by that and what the widow

got as tenant by the entireties, obtain out of their father's property an amount greatly in excess of what they ought to have, as compared with what the children of the first wife would get, it resulted in at least some intimations, if not threats, of proceedings to try to have the deeds, or some of them, conveying the properties to the husband and wife, set aside, unless some settlement was made. Charles A. Derlin, one of the first set of children, took a very positive stand in reference to the matter, and he was the only child of the testator who did not consent to the sale when the proceedings were commenced. After a number of conferences and a good deal of discussion with some of the feeling which generally results from family differences over money—especially between two sets of children—the widow and the children of the first wife entered into an agreement by which it was agreed that an audit which had already been stated should not be excepted to, if the widow gave a thousand dollars to each of the children by the first wife in addition to what they got by the audit; and the children of the first wife were to acquit, exonerate and release her from any claim they might have against her for or on account of the estate left by their father, and for or on account of any of the properties received by her as the surviving tenant by the entireties. By the audit, Mrs. Derlin was allowed $2,000 commissions, one-half of which she had agreed to give Mr. McKindless; he and his son were allowed a fee of $500, spoken of elsewhere in this opinion; the widow was only allowed one-tenth, instead of one-third, of the purchase money of the real estate sold; and each of the eleven children of the testator was allowed $5,-099.63—while, if she had been allowed one-third, her share would have been increased by $9,704.08, and each child would get $882.19 less than allowed in the audit. The audit had been stated in pursuance of a letter written by Mr. McKindless to the auditor, dated March 14, 1922. He explained writing the letter by saying that the papers had been in the hands of the auditor for three or four weeks, and he had been expecting to have a petition to the court, signed by all of

the parties, requesting the audit to be made in the way it was, but Charles A. Derlin had declined to sign the petition, as he demanded more, which the other children of the first wife subsequently did.

The agreement dated March 27th, 1922, was drawn by Derlin A. McKindless, a son of Richard McKindless, and a member of the bar of Baltimore, was signed by the widow, Charles A. Derlin and Derlin A. McKindless, as attorney for the other five children of the first wife. Charles A. Derlin lived in Washington, and he came over to Baltimore prepared to file exceptions to the audit if some other arrangement was not made, so that the children by the first wife would get more, and he only had two or three days in which to file exceptions under the rules of court, if he determined to do so. Miss Amelia Derlin, Charles A. Derlin, Mrs. McKindless and another, spoken of as "Jennie" (who we understood was Mrs. Hendrickson), in the presence of Mr. McKindless, had agreed upon what they would do, and they determined to demand $6,000, instead of something over $5,000 for each of them. Mr. McKindless told Mrs. Derlin of their conclusion, and discussed it with her. He said he advised her to get a lawyer other than himself when he found the position the children of the first wife had taken; that on Monday or Tuesday night of that week he was telephoned to by Charles A. Derlin to come to Mrs. Derlin's house, and he went there about 8.30 or 9 o'clock P. M. with Charles A. Derlin, who had met him and his son on the street; that Mrs. Derlin told Charles A., as she had told him and Miss Amelia that afternoon, that she would give each one of them $1,000 in addition to what they received in the audit. They then discussed the question as to how she would raise the amount, and it was determined that she would give them the South Arlington Avenue property and forty-five shares of stock. Mr. McKindless instructed his son to draw up the agreement, which he did—being the one of March 27th, 1922.

The auditor's account, which allowed each of the eleven children $5,099.63, was filed March 20th, 1922, only allow-

ing the widow one-tenth of the proceeds of the sales of the real estate, and on March 29th Mrs. Derlin filed exceptions to the audit and the same day Mrs. Ermer and Mrs. Harrison, children of the third wife, also filed exceptions. They were the same in substance, and were as follows: "That the said estate is not distributed in accordance with the terms of the will of the said August Derlin, deceased, and that the distribution account is not in accordance with the law in such cases made and provided as to the dower and thirds of Anna Catherine Derlin, widow of August Derlin, deceased." The hearing of the exceptions began on April 17th, 1922, and the witnesses were examined orally before the court. On May 1st, 1922, a decree was passed sustaining the exceptions and declaring null and void and of no effect the agreement of March 27th, 1922. This appeal was taken from the decree.

As by the audit Mrs. Ermer and Mrs. Harrison would have received more than they were entitled to, it is not shown that they had any standing to except to it. They could not except for the benefit of their mother, for although it may be that they will eventually receive more from her, if she gets all she is entitled to, than they would under the audit, they do not have such interests in their mother's share now as would entitle them to except to the audit, because their mother does not get all she is allowed under the law. But the widow had an interest which would be affected if the audit was ratified, and she was authorized to file exceptions to it unless she has estopped herself by the agreement spoken of, or in some other way. The agreement of March 27th was not entered into until after the audit was filed. Although the appellants received more by it than they are entitled to under the statute, owing to the distribution to the widow being less than the law allowed her, they are, of course, entitled to appeal, as the agreement of March 27th was set aside by the decree. Whether that part of the decree was validly passed is the substantial question in this case, for if it was, Mrs. Derlin's exceptions to the audit were properly sustained. No valid objection could be made to Mr. McKindless' representing the

widow and aiding her in the distribution of the estate simply
because his wife was an interested party, as long as there
was no conflict between the interests of the widow and those
of his wife, and others similarly situated.   He had been Mr.
Derlin's attorney in his life time, and it was both natural and
reasonable that the widow should select him, if she had con-
fidence in him, as she apparently had.   The mistake he made
was in not withdrawing and declining to act at all, when he
found that the children of the first wife, of which his wife
was one, were determined to question the validity of the deeds
to Mr. and Mrs. August Derlin as tenants by the entireties,
unless she compensated them by complying with their de-
mands and giving them more than they were entitled to under
our statute, which was applicable to this estate.   Mr. Mc-
Kindless himself was not at first familiar with the Act of
1916, and it was only after he had made a study of it that he
reached the conclusion that Mrs. Derlin was entitled to one-
third of the proceeds of the sales of the real estate, instead of
a sum allowed as compensation for a dower interest wherever
a widow consents to a sale free of her dower, and agrees to
accept a sum allowed in lieu of her dower according to her
age.   In justice to him, it is proper to say that the record
abundantly shows that he did inform Mrs. Derlin that in his
judgment she was entitled under the law to one-third, and not
merely to one-tenth, and did that quite frequently, in the
course of their numerous interviews; but at the same time it
is shown that when she did agree to accept the one-tenth and
even before she had so agreed, he did show her that it would
be very agreeable to him if she accepted the lesser sum, in-
stead of insisting upon the third.   She claims that she did not
understand the meaning of all that was told her, or the papers
read to her and signed by her.   It is not hard to understand
that a woman unaccustomed to dealing with such a large
estate, claimed by the appellants to approach in value $100,-
000, including properties which had been conveyed to her
and her husband, would have difficulty in comprehending the
many questions which she would have to meet, and would

require advice on the important matters as free from counter
influences as possible. A nervous woman, as she apparently
was while the controversies were going on, is undoubtedly
placed in a difficult position when she has on the one side
her right to certain properties plus her own children's pecu-
niary interest, and on the other children of her deceased hus-
band by another wife, who were asserting that the division
the law made was unfair and not in accord with her husband's
wishes, and threatening lawsuits if she did not yield to their
demands. No half way advice, or that affected by a material
interest in the claims of the other side, would relieve her.
Mr. McKindless recognized to some extent, at least, the posi-
tion he was in, and said he advised her to consult another
lawyer, but when she asked him to suggest one he declined,
very properly too, but told her he would like to have the name
of the one selected before she saw him, so he might advise her
as to his standing. As he truly said: "I had arrived at the
parting of the ways."

But very soon after that he was present during part of
the conversations immediately preceding the signing of the
agreement of March 27th. At that interview Charles A.
Derlin told her, in his presence, "that this was his final
interview with her in regard to his father's estate," and asked
her, "Do you intend to pay $1,000 to each of us in full settle-
ment of everything in addition to the auditor's account?"
Mr. McKindless said: "Mrs. Derlin objected to parting
with any of the stock and gave us a specific reason of her own,
that Mr. Derlin had owned it a long time and she would not
divide it. He said: "There was an hour's conversation over
the mode and the method of making this payment, when
Mrs. Derlin suggested" the South Arlington Avenue property
and the forty-five shares of stock.

Charles A. Derlin was not only a son of August Derlin by
the first wife, but he too was a lawyer, and was decided in his
demand. There were, then, three lawyers present when that
agreement was executed—one who had been representing
Mrs. Derlin and was still doing so, his son, who drew the

agreement and signed for the children by the first wife, ex-
cepting the other lawyer, who signed for himself. That was
not an occasion where there was much freedom of action on
the part of the widow assured. As we understand, the only
other member of the family present throughout the entire
evening was Miss Lillian, the minor daughter of the widow.

It must be remembered that on the 17th of February, 1922,
the court passed an order referring the papers to an auditor
of the court, in which the sum of $500 was "allowed as a fee
to Richard McKindless and A. Derlin McKindless, attorneys,
for their said services, subject to the usual exceptions," and it
was ordered "that the net estate be distributed to the said
widow and said eleven children as provided in the will."
That order, it is true, was passed on her petition, in which
she said: "That by and with the consent of a majority of the
adult children mentioned in this cause she agreed to pay" this
fee. In addition to that, on February 2, 1922, Anna Cath-
erine Derlin entered into an agreement to pay Richard Mc-
Kindless one-half of the commissions that might be allowed
her, over and above the fee of $500 allowed by the court,
which concluded by saying: "This is for personal services
in arranging an amicable sale and settlement of the estate."
Then, on cross-examination he was asked the direct question:
"Did you advise her to take one-tenth instead of one-third
of the estate?" and answered: "I informed Mrs. Derlin
that I would be more than pleased, and I knew the children
would be more than pleased, and I thought that it was fair
and right that she should take a tenth, and that was probably
Mr. Derlin's real intention, but I advised her that legally,
repeatedly in the presence of almost every member of her
family, that was in Baltimore, that legally she could demand
one-third."

Mr. McKindless said the auditor's account was in front
of him, and each and every item was discussed with Mrs.
Derlin; that "each and every page and item on it had been
gone over by me and Mr. Derlin with Mrs. Derlin, the
waiving of the commissions, and the way it was increased to

each child, and the way the auditor stated it was then and there discussed. This appears in his testimony: "Q. Were you called upon at any time to advise Mrs. Derlin as to whether or not she could stand suit if she desired to? A. Mrs. Derlin sought from me a statement to the effect that she could not be sued. I repeatedly explained to her that any of the children could sue her at any time, but I advised her before the signing of this last account, whereby she agreed to pay the $1,000 extra, to stand on the auditor's account, as it was stated by the auditor, and if the other children, although my wife was one of them, sued her, to cross that bridge when she came to it, and probably it would be to her advantage to get some lawyer to represent her in that contest. I advised her to stand on the auditor's account." His testimony shows that Mrs. Derlin talked with her sons-in-law and daughters sometimes about her taking the tenth. We are impressed by her own testimony and by that of some of the other witnesses, that Mrs. Derlin understood more about what was going on, and what was being done at the times they occurred, than her testimony indicates. We believe that some of the evidence does Mr. McKindless injustice, and we do not believe that he intended to perpetrate a fraud on Mrs. Derlin, or that he intentionally misled her in any way, but we cannot approve of an agreement such as this, made under the conditions which have been set out. Although the physician called by the exceptants testified that, in his opinion, she was not competent to make a valid deed or contract on March 27, 1922, the day this agreement was executed, his opportunity for knowledge of her mental condition at that time was very limited, and we cannot but be struck with the peculiar conditions presented by this record, when the exceptants undertook to prove by the physician that Mrs. Derlin did not have the mental capacity to make a valid deed or contract during the month of March, yet on the 29th of that month, two days after the agreement was signed, she swore to and filed these exceptions by her attorneys. If she was in such condition of mind as the doctor's evidence

indicated, it would have been more proper for her to have proceeded by her next friend, under general Equity Rule 9, referred to in *Re Paca,* 140 Md. 45, where the subject is considered at some length. See also 10 *Enc. of Pl. & Pr.,* 1224. But we do not find sufficient in the record to convince us that her mental condition was such as to prevent her from filing the exceptions in the usual way. If a court of equity was satisfied that she was mentally incapable of making a valid deed or contract, and that she did not understand what she was doing when she filed the exceptions, it could, on application, have appointed a next friend to represent her.

If we strike the testimony of the doctor out, as we have in effect done in considering the case, it does not relieve us of the main difficulty we have, which is that an agreement should not be accepted as binding under such circumstances as this record discloses. None of the authorities cited by the appellants are sufficient to permit such an agreement as this to stand, when made under the circumstances shown, whether it be in family settlements or otherwise. If this was a family settlement between the two branches, it was a one-sided one, so far as the widow was concerned. Her money which, under her husband's will, the law gave her, was being taken under the audit to give the children more than they were entitled to, and under the agreement it was to be taken to give to each of the children of the first wife a thousand dollars more than her own children were to get. Although equity in family settlements may not inquire closely into the consideration for them, there has in fact been nothing shown against the deeds to the husband and wife, except that they gave the widow a good deal more than the children of the first wife thought she ought to have. If she had died first, the properties would have gone to the husband, but by reason of her surviving her husband she took them. Of course, we are only speaking from what is in this record, and not meaning by what we say to preclude the appellants from, or embarrassing them in, making any just contest they may be entitled to make; but not meaning in any way to question the law

as to family settlements, we must not forget the equally well established principles as to attorneys and clients.

The general rule may for convenience be quoted from 2 *R. C. L.* 974, par. 51, where it is said: "An attorney at law who has once been retained and received the confidence of a client, is thereafter disqualified from acting for any other person adversely interested in the same general matter, however slight such adverse interest may be. Nor does it matter that the intention and motive of the attorney are honest. This rule is a rigid one, and designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent." In *Peirce* v. *Palmer,* 31 R. I. 432, Ann. Cas. 1912 B, 181, and note, a vast number of cases are cited in the note and the different opinions, including *Merryman* v. *Euler,* 59 Md. 588. See also *McLean* v. *Maloy,* 136 Md. 467, 512-515.

> *Decree affirmed and cause remanded for further proceedings in accordance with this opinion, the appellants to pay the costs.*