Kermit **MATTRESS** and Gary Eugene Chesney, Appellants,

v.

**STATE** of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Dec. 9, 1977.

Michael E. Starling, Knoxville, for Chesney.

William A. Hotz, Knoxville, for Mattress.

Brooks McLemore, Jr., Atty. Gen., Linda Ross Butts, Asst. Atty. Gen., Nashville, Randall Nichols, Asst. Dist. Atty. Gen., Knoxville, for appellee.

## OPINION

WALKER, Judge.

Kermit Mattress and Gary Eugene Chesney were jointly indicted in case no. C–2234 for armed robbery of Eddie Lee Doane, doing business as Doane's Market in Knoxville. In a companion case they were indicted for armed robbery of Ambers Rogers. On the trial of the cases together, they were found guilty in both. In the first case Mattress was sentenced to 15 years and Chesney to ten years; in the second case Mattress was sentenced to ten years and Chesney to 20 years in the penitentiary. The appellants' sentences are concurrent.

The principal questions presented by the appellants on appeal are whether or not a conflict of interest on the part of an assistant district attorney general required dismissal of the cases and whether or not the district attorney general's office was precluded from prosecuting the cases because of that conflict. After a hearing before trial, the court held that assistant district attorney general Kim Tollison would not be allowed to participate in the trial but that assistant district attorney general Nichols could prosecute the cases. The appellants contend that this action by the court was insufficient to remove any appearance of impropriety. We disagree with the appellants and find the trial court's action adequate to dispel any appearance of impropriety.

The record shows that in April 1976, General Tollison, then a staff attorney at the University of Tennessee Legal Clinic, accepted a case for the clinic involving Chesney. The charges concerned accessory to rape and robbery. Chesney was interviewed, not by Tollison, but by a law student assigned to the cases. Another file from Legal Aid showed that Tollison was assigned to the case of Mattress, involving two counts of armed robbery. Tollison left the Legal Clinic about a month after his assignment to Chesney's case and a somewhat shorter time after his assignment to Mattress' case.

General Tollison did not recall the cases and did not think he had talked with either appellant. Neither appellant claimed to have been interviewed by General Tollison or to have divulged any confidential information to him.

In the preparation of the case for the prosecution, General Tollison interviewed state's witnesses and prepared a motion for a continuance for the absence of a state witness. From the record and the holding

of the court, he had no confidential information from appellants and, of course, communicated none to anyone in the district attorney general's office.

It has long been firmly established, both in the Canons of Professional Ethics and by judicial opinions, that attorneys cannot represent conflicting interests or undertake to discharge inconsistent duties. When an attorney has once been engaged and received the confidences of his client, he cannot enter the services of those whose interests are adverse to that of his client or former client. Our leading case on this question is *Autry v. State,* 1 Tenn.Cr. App. 95, 430 S.W.2d 808 (1967). The trial court here properly held that General Tollison was disqualified from prosecuting the cases, but none of the principles of *Autry* were violated by refusing to disqualify the entire District Attorney General's staff or by refusing to dismiss the indictments.

An excellent annotation on the Disqualification of Prosecuting Attorneys on Account of Relationship with Accused is found in 31 A.L.R.3d beginning on page 953.

In *Hannon v. State,* 48 Ala.App. 613, 266 So.2d 825 (1972), the Alabama Court of Criminal Appeals held there was no reason to disqualify the entire district attorney's staff when the district attorney had interviewed the appellant while associated with the public defender's office but had no independent recollection about the case and had not discussed it with the assistant prosecutor in charge of it. Allowing the prosecution to continue there did not amount to a denial of a fair and impartial trial or constitute a breach of the attorney-client relationship.

The application here sought to have the court bar participation of all assistant district attorneys general as well as the district attorney general himself, although there was no claim that any one of them ever represented appellants or had any confidential information. This broad disqualification was unnecessary to preserve the appearance of a fair trial or to protect the appellants' rights. *See Fox v. Shapiro,* 84 Misc.2d 223, 375 N.Y.S.2d 945 (1975).

There has been no breach of the attorney-client relationship, the privilege against disclosure has been preserved, and professional ethics have been painstakingly observed. The constitutional right to a fair and impartial trial was not infringed. With these rights observed, the public interest demanded that the prosecution go forward. These assignments are therefore overruled.

Both appellants next challenge the sufficiency of the evidence.

The state's evidence, which the jury accredited, showed that between 9:00 and 9:30 a. m., February 18, 1976, two unmasked men wearing toboggan caps entered the Knoxville store where Eddie Doane, Ambers Rogers and Pearson Braner were working. Doane positively identified Chesney as the man who, at gun point, robbed him of his billfold, money clip and then opened the cash register.

While Chesney was at the front counter, the other man, identified by Rogers as the appellant Mattress, went to the rear of the store, pointed a pistol at Rogers and robbed him of his billfold and money. He overlooked Rogers' pistol, which Rogers then used to fire at the appellants as they fled.

In the midst of the robbery, Clifford Lattimore, a customer, entered and saw the appellants there. He made an in-court identification of both. Braner also identified Chesney as one of the robbers.

Each appellant, testifying in his own behalf, denied any participation in the robbery and relied on an alibi. Chesney and his witnesses testified that he was in bed asleep at the time of the crime. He said he and Mattress were not together that morning. Mattress and his witnesses testified he was at an apartment until 11:00 a. m. that day. The jury disbelieved the appellants, and there was ample evidence, which the jury accredited by their verdicts, to sustain the conviction. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963).

Both appellants claim they were denied their constitutional right to a speedy

trial. They point out that about one year elapsed between their arrests and their trial. One indictment was returned June 28 and the other July 2, 1976. On motion of the state and each appellant, the court, on November 3, granted a continuance until January 4, 1977, at which time the state was granted a resetting until March 3 on account of the hospitalization of one of the victims of the robbery.

On the trial day, March 3, 1977, the appellants for the first time asserted their right to a speedy trial. They had made no effort to have their cases heard speedily and have shown no prejudice to themselves. In *Farr v. State,* 506 S.W.2d 811 (Tenn.Cr. App.1974), the appellant contended a 13-month delay denied him the right to a speedy trial. We there considered the balancing test of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and held that Farr had not been denied a speedy trial. Under this authority we overrule the appellants' claim of denial of speedy trial.

■ Mattress contends the trial court erred by overruling his motion for a severance. We find no prejudice to him in this record. The trial court did not abuse its discretion. Likewise without merit is Mattress' claim that the trial judge improperly limited his cross-examination of Rogers. The scope of cross-examination is a matter of discretion on the part of the trial court, subject to reversal only if abuse is apparent. *Edwards v. State,* 221 Tenn. 60, 424 S.W.2d 783 (1968). We find no abuse of that discretion.

■ Mattress also complains of the alibi instruction, citing *Christian v. State,* 555 S.W.2d 863 (Tenn.1977). This question was not raised in the motion for a new trial. Further, these cases were tried before *Christian* and its rule is not applicable.

■ Chesney, in his final assignment, complains that the jury acted arbitrarily in setting different punishments for the appellants. He cites no authority. The punishments are within statutory limits and there is no merit in his assertion that the jury acted arbitrarily or capriciously. *Bailey v. State,* 479 S.W.2d 829 (Tenn.Cr.App.1972). Moreover, Chesney's greater punishment in one case logically reflects the fact that he was the robber who held a pistol to Eddie Doane, the prosecutor in that case.

All assignments by each appellant have been fully considered and are overruled.

Judgments affirmed.

TATUM and BYERS, JJ., concur.