| | |
|---|---|
| Subtotal — Principal | $   798,158.39 |
| Less: Application of Bernazki Mortgage | 10,370.10 |
| Total Principal | $   787,788.29 |
| Interest (7/12/74 — 7/17/78) | 298,914.95 |
| Total Due Marva PCA | $1,086,703.24 |

Expenses:

| | |
|---|---|
| Salaries, Social Security, Insurance — | |
| Guards | $108,409.11 |
| Electric and Telephone | 30,404.41 |
| Insurance on Property | 122,792.72 |
| Miscellaneous Maintenance | 735.55 |
| Real Estate Taxes | 55,619.06 |
| Miscellaneous | 33,007.35 |
| Attorneys' Fees | 15,668.32 |
| Total Expenses (Recorded on Ledger) | $366,636.52 |

## STATE OF MARYLAND *v.* MITZI JEAN LYKINS

[No. 235, September Term, 1979.]

*Decided October 9, 1979.*

The cause was argued before MORTON, MOYLAN and MASON, JJ.

*William H. Kenety, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Neal Myerberg, State's Attorney for St. Mary's County,* on the brief, for appellant.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The office of State's Attorney is independent, elective and constitutional. It is not part of the judicial branch of government but is established, along with the office of Attorney General, by Article V of the Maryland Constitution. It has been a constitutional office since 1851. With respect to his conduct in office, the State's Attorney is "subject to removal" for "incompetency, willful neglect of duty, or misdemeanor in office" either upon a "conviction in a Court of Law" or upon "a vote of two-thirds of the Senate, on the recommendation of the Attorney-General." *Maryland Constitution,* Article V, Section 7. Beyond that, the State's Attorney is answerable for his conduct in office to his electorate every four years. A healthy respect for the delicate balance of powers upon which our democratic institutions rest compels that we brook no lightly assumed interference by the judicial branch with the function of that independent branch of government and that we not arrogate unto our branch supervisory powers which the Constitution does not bestow. The legal context for the decision that follows was well articulated by Chief Judge Murphy in *State v. Hunter,* 10 Md. App. 300, at 305:

> ".... [T]he office of State's Attorney is not a branch of the judiciary, nor is it directly subject to its supervison. See *United States v. Shaw,* 226 A.2d 366 (Dist. Ct. App. D.C.). Under the Constitution and laws of Maryland, the State's Attorney is a constitutional officer elected by the people and entrusted by them with the prosecution of persons

accused of crime. The office is one of great dignity and commands great respect."

See also *State v. Aquilla,* 18 Md. App. 487, 493.

Neal Myerberg took office as the newly elected State's Attorney of St. Mary's County in January, 1979. Before that, he had been in private practice in that county. On January 29, 1979, the grand jury indicted the appellee, Mitzi Jean Lykins, for assault with intent to murder one George Welch. On April 3, 1979, the Circuit Court for St. Mary's County granted the appellee's motion to dismiss the indictment because of the fact that State's Attorney Myerberg had once represented her in a civil matter. The State has appealed that ruling.

The testimony revealed that Mr. Myerberg met the appellee in July of 1978. She was than a Mrs. Anderson. He prepared a separation agreement between her and Mr. Anderson and mailed it to her. The separation was apparently uncontested. He had no further contact with her. He also testified that, in the course of an extensive practice, he had written over a thousand such separation agreements. The hearing judge found expressly, "Certainly the Court is not in any way implying that there is any impropriety in the case or certainly no dishonesty here." He based his ruling, however, on the "possible appearance of impropriety."

The reliance of the hearing judge (and of the appellee) on *Sinclair v. State,* 278 Md. 243, is totally misplaced. *Sinclair* represents a limited incursion of the judicial branch into the independent functioning of the prosecutor's office. Its literal holding deals only with the possible upsetting of a conviction based upon a trial which, because of prosecutorial bias, did not afford due process of law. Notwithstanding a strong appearance of true bias, the Court of Appeals in *Sinclair* remanded the case to the trial court to determine whether an actual conflict of interest existed or not. *Sinclair,* moreover, was very explicit about what a disabling conflict would be. It gave as "the controlling principle of the case" at 254:

".... [I]f a prosecutor has, or would clearly appear to a reasonable person having knowledge of the pertinent facts to have, any pecuniary interest or a

significant personal interest in a civil matter which may impair his obligation in a criminal matter to act impartially toward both the State and the accused, then he is, on the basis of this State's public policy, disqualified from initiating or participating in the prosecution of that criminal cause."

There is no shred of a suggestion that Mr. Myerberg had "any pecuniary interest or a significant personal interest in a civil matter" which would impair his ability to act impartially in the criminal prosecution. The judgment is, therefore, reversed.

It follows from the above that the Deputy State's Attorney and the Assistant State's Attorney, who had even less contact with the appellee than Mr. Myerberg, cannot be disqualified from performing their prosecutorial duties in this case.

*Judgment reversed; case remanded for further proceedings.*

*Costs to be paid by appellee.*