880 A.2d 322

**Troy Arness GATEWOOD**

v.

**STATE of Maryland.**

**No. 107, Sept. Term, 2004.**

Court of Appeals of Maryland.

Aug. 15, 2005.

528

Bradford C. Peabody, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for petitioner.

Edward J. Kelley, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, J.

The Circuit Court for Cecil County conducted a jury trial in 2003 for Troy Arness Gatewood who stood charged with three counts of possession and three counts of distribution of a controlled dangerous substance (CDS). After voir dire was completed, Gatewood moved to disqualify the prosecutor, the State's Attorney for Cecil County, Christopher Eastridge, Esquire,[1] because Eastridge, while employed as a public de-

---

1. The Court of Special Appeals's opinion in this case and the Petitioner's brief in this Court refer to Eastridge as an Assistant State's Attorney. The Respondent's brief refers to Eastridge as the State's Attorney for Cecil County. We will refer to Eastridge as the State's Attorney throughout because he was elected to and sworn into that office after defeating the prior incumbent Cecil County State's Attorney, John Scarborough. On this record, we note that Scarborough entered his appearance as State's Attorney for Cecil County at a pre-trial hearing on 20 December 2002. Newly elected State's Attorney Eastridge entered his appearance in this case on 17 January 2003. There

fender previously, represented Gatewood in a different case. During an ensuing bench conference, Eastridge claimed to have no specific recollection of Gatewood or the earlier case. The trial judge denied the motion.

After empaneling the jury and entertaining opening arguments, the court observed a lunch recess. Upon court reconvening, Gatewood's current counsel, a public defender, proffered that electronic records at the public defender's office he checked during the luncheon recess confirmed that Eastridge represented Gatewood on two cases in 1998—a burglary charge (resulting in a nolle prosequi) and a conspiracy to possess CDS (resolved by a guilty plea). During an ensuing bench conference, the trial judge denied Gatewood's renewed motion to disqualify Eastridge, observing that he did "not see any unfair prejudice" to Gatewood. Gatewood ultimately was convicted by the jury on three counts of distribution of a CDS, under then-Article 27, § 286(a) of the Maryland Code.[2]

▮ Gatewood appealed to the Court of Special Appeals raising several issues. Of relevance to the present case, the Court of Special Appeals, in affirming most of the Circuit Court's judgments, held that the trial judge's refusal to grant Gatewood's motion to disqualify the State's Attorney was not error. *Gatewood v. State,* 158 Md.App. 458, 857 A.2d 590 (2004).[3] We granted Gatewood's petition and issued a writ of certiorari, *Gatewood v. State,* 384 Md. 448, 863 A.2d 997

is no indication in this record that Eastridge previously served as an Assistant State's Attorney prior to his election as State's Attorney.

**2.** The General Assembly repealed former Article 27, § 286, 2002 Md. Laws ch. 26, and codified the current prohibition against CDS distribution at § 5–602 of the Criminal Law Article of the Maryland Code. Gatewood's indictments were issued prior to the effective date, 1 October 2002, of Chapter 26 of the Maryland Laws of 2002.

**3.** The Court of Special Appeals vacated an aspect of Gatewood's sentencing, remanding the case to the Circuit Court with directions to strike the order of probation because the trial court did not suspend properly any portion of the three concurrent twenty year sentences imposed. *Gatewood v. State,* 158 Md.App. 458, 482–83, 857 A.2d 590, 603–604 (2004).

(2004), to consider whether the Circuit Court erred in denying the motion to disqualify the State's Attorney. Answering in the negative, we shall affirm. Where the potential conflict of interest with a former client in a criminal case arises out of a substantially unrelated charge (although similar to the current ones for which the former client was being tried), and the trial court makes an appropriate inquiry into potential prejudice to the defendant in the current prosecution from the risk of disclosure of any confidential information that may have been imparted during the previous representation, but finds none, the court is not compelled to disqualify the prosecutor.

### I.

A grand jury indicted Gatewood on three counts each of possession and distribution of a CDS (cocaine).[4] After voir dire of the jury, the following exchange occurred at the bench:

[PUBLIC DEFENDER]: Your Honor, Mr. Gatewood has brought to my attention the fact that he believes the state's attorney has represented him before, and believes that this is a conflict with respect to his prosecution of him. At this point in time I can't say that I disagree entirely with that. Mr. Eastridge was a member of our office for a number of years. I don't personally know the cases he may have been involved in, but I think that, you know, that certainly does raise the specter of impropriety and perhaps a conflict to have Mr. Eastridge prosecuting him, and perhaps even trying to impeach him with prior convictions that he may have been involved with in one way or another.

[THE COURT]: Well, do you remember representing—

[MR. EASTRIDGE]: Your Honor, I have no specific recollection of a particular case with Mr. Gatewood. I remember Mr. Gatewood from the P.D. Office. In saying that, I am

---

4. The indictments were obtained in August 2002 by Mr. Eastridge's predecessor as State's Attorney. At trial, Eastridge was the State's Attorney by virtue of his victory in the November 2002 general election. The record is silent as to when Mr. Eastridge was sworn in as State's Attorney.

saying that I remember him as a client, I cannot recall particularly whether he was a client or a person whom I represented in any particular case.

[COURT]: Do you have any knowledge that would in any way be useful to—in this case?

[EASTRIDGE]: No, I do not.

[COURT]: Even if you did have such knowledge is there any way you could get it into this case?

[EASTRIDGE]: Your Honor, none that I know of. I have apprised the court and [the Public Defender] as well with regard all the impeachment convictions upon which the state would be relying. They are of record in—they are of record; they came to me through a presentence report that I found in another file in the State's Attorney's Office.

[COURT]: Not from the public defender?

[EASTRIDGE]: That's correct your honor.

[PUBLIC DEFENDER]: Memory is a tricky thing, judge, and I think that the more one is confronted with a situation with which you were familiar at one time, things may come to Mr. Eastridge about which he is not conscious of at this point in time, and there is a good possibility that Mr. Gatewood may take the stand, and in the process of Mr. Eastridge's cross-examination, things may come to him that don't appear now, he's not even aware of now.

I think that's the problem that we have. I don't think [it is] solved by Mr. Eastridge saying I am even limiting my impeachments to those decisions, nor solved by him—I have no reason to doubt the assertion that no information that he's aware of now has come to you other than through the State's Attorney's Office. I think his involvement with the office and involvement with Mr. Gatewood, I think it makes it improper for him to prosecute Mr. Gatewood; namely, I understand the office has an obligation. That's not an issue. But I think Mr. Eastridges's—I apologize for bringing this up at this point in time. I was not aware of it until Mr. Gatewood just told me during voir dire that Mr. Eastridge

was the person who represented him, that he's again—I apologize to the court for not being aware of this earlier. [COURT]: I understand the defendant's concern. There is no way that I can think of, even if he had any knowledge, that he could get it in, that he would use it. His questions have to be relevant to this case and this case only. The only impeachment information he has is those three, which are a matter of record, theft, robbery that anybody can learn, which are a matter of record. It doesn't make any difference who the prosecutor was....

\*  \*  \*  \*  \*  \*

That there is no way that can in any way hurt Mr. Gatewood.

The Circuit Court then empaneled the jury and permitted opening arguments before a lunch recess.

After the court reconvened, Gatewood's defense counsel again moved to disqualify State's Attorney Eastridge:

[PUBLIC DEFENDER]: Your Honor, I have one more preliminary matter actually in conjunction with the prior motion I had made about the state's attorney's prior representation of Mr. Gatewood. I went back through our electronic records in our office, and just with respect to proffering for the record, it appears that Mr. Eastridge did represent this defendant on at least two cases, both of which apparently ended or closed in '98. One was a— looked like it started out a burglary charge ...

\*  \*  \*  \*  \*  \*

which appeared to me to end up in a nol pros pursuant to our records.

And the other one was a ... drug distribution case, which ended up as a plea ... to a conspiracy to possess. We closed it in March of '98. It appears sentencing took place March 16th of 1998.

Again, just to reiterate my argument, I think that those are fairly significant charges, which I believe, regardless of the state's attorney's ability to [recollect] independently right

now, would have clearly involved some significant contact with the defendant, in preparation of those matters and also in the resolution of the one drug case.

Again, I would ask that the state's attorney be disqualified from prosecuting personally in the matter of Mr. Gatewood.

Eastridge responded:

[EASTRIDGE]: I have no recollection of either case. Frankly [the public defender] had shared that information with me briefly before he offered it to the court. Let me say too, I've been with the P.D. [Public Defender's] Office from 1986 through 1998, a period of about twelve years, represented hundreds if not thousands of individuals. I really have no recollection of hardly any one. In fact there may be one that will stick out. It's certainly not Mr. Gatewood.

In my current role obviously I can't disqualify myself in each and every case where a defendant comes before the court, by happenstance my having represented them on some occasion many years back. I think that's the case here. I have no recollection of it.

As we discussed earlier, should Mr. Gatewood elect to testify, obviously it's his choice, whether he wishes to testify or not. If he does testify, I'd like to cross-examine him. Any cross-examination will be limited to the facts of the case; and any impeachment information that's not secret to Mr. Gatewood or his counsel. We've just discussed that already, as well as in chambers at an earlier proceeding in this case.

[THE COURT]: I do not see any unfair prejudice or any prejudice at all to the defendant, Mr. Gatewood. I've listened carefully to the question. There is some discussion suggesting there may be something there. [Public Defender], raise it again at that time, and we'll see.

[PUBLIC DEFENDER]: Yes, sir.

Mr. Gatewood testified on his own behalf. The following brief cross-examination concerning impeachment occurred:

[EASTRIDGE]: And, Mr. Gatewood, you recall having been convicted on two occasions in 1989 on two separate occasions for theft, is that correct?

[GATEWOOD]: Yes, sir.

In his cross-examination of Gatewood, Eastridge did not refer to either case in which he allegedly represented Gatewood in 1998 while a public defender. Gatewood's present defense counsel did not raise again the issue of Eastridge's disqualification.

Considering Gatewood's appeal, the Court of Special Appeals held that the "decision to disqualify counsel is committed to the sound discretion of the trial court, and should be appropriately judged on a case-by-case basis." *Gatewood,* 158 Md.App. at 466, 857 A.2d at 594. In affirming the trial court's decision not to disqualify the State's Attorney, the intermediate appellate court noted that the prior representations of Gatewood by Eastridge involved matters not substantially related to the case at hand. *Id.* at 470, 857 A.2d at 596.

## II.

Gatewood, in seeking a reversal of the judgment below, contends that the decision not to disqualify the prosecuting attorney may be overturned if it constituted clear error, violated public policy, or, as a last resort, the trial judge abused his or her discretion. The State asserts the correct standard to apply is solely whether the trial judge abused his or her discretion. We hold that the State is correct.

In *Sinclair v. State,* 278 Md. 243, 363 A.2d 468 (1976), Sinclair was convicted of five violations of the Maryland Worthless Check Act after writing checks, on behalf of the Great Oak Lodge, from a corporate account with insufficient funds. The State's Attorney and Deputy State's Attorney for Kent County, who prosecuted Sinclair on these charges, held themselves out as a partnership in the private practice of law concurrent with their public service as prosecutors. Sinclair filed a motion to disqualify both attorneys, submitting an affidavit alleging that, in their capacities as private practition-

ers, they represented interests holding notes related to a transaction in which Sinclair was interested.[5] Sinclair alleged further in the same affidavit that the State's Attorney, prior to presentment of the criminal charges to the Grand Jury, threatened to indict Sinclair should he appeal an adverse decision in a separate civil action entitled *Great Oak Resort & Yacht Club, Inc. v. Sinclair. Id.* at 245–48, 363 A.2d at 470–71. On the day following Sinclair's filing of an appeal in that case, the Grand Jury was called into special session and indictments were returned against him. *Id.* at 248, 363 A.2d at 471. The trial judge denied the motion to disqualify, without a hearing, stating that the motion was based on bald allegations. *Id.* at 248, 363 A.2d at 472.[6] Absent from the record was any evidence or a finding of any direct conflict between the State's Attorney or his Deputy in representing Sinclair as a past client or any indication that the State's Attorney or his Deputy were involved in the aforementioned civil action.[7]

---

5.   Sinclair was negotiating to purchase the Great Oak Resort and Yacht Club, Inc. (Great Oak Yacht), Great Oak Estates Realty, Inc. (Great Oak Realty), and other real property from Frank and Ethel Russell. The Deputy State's Attorney represented the Maryland National Bank, which held a note against the Russells and Great Oak Realty. The State's Attorney represented a private party holding a note against the Russells and Great Oak Yacht.

The State's Attorney for Kent County removed the case to the Circuit Court for Caroline County. Shortly afterward, the Deputy State's Attorney filed a motion to delay the trial in order to arrange for an alternate prosecutor from the Attorney General's office. *Sinclair,* 278 Md. at 245–46, 363 A.2d at 470. When the case went to pretrial conference, however, the State's Attorney and Deputy State's Attorney, without further explanation, declared their intention to try the case. *Id.* at 247, 363 A.2d at 471.

6.   Sinclair's eventual convictions arose not from the indictments returned by the Grand Jury, but from charges arising in a criminal information filed by the State's Attorney. *Sinclair,* 278 Md. at 248 n. 2, 363 A.2d at 472 n. 2.

7.   Former DR 7–105(A), which stated that a "[l]awyer shall not present, participate, or threaten to present criminal charges solely to obtain an advantage in a civil manner," also buttressed our opinion in *Sinclair,* although a violation of the former Maryland Code of Professional Responsibility, by itself, would not compel necessarily reversing a

In reversing the decision of the Circuit Court for Caroline County, the Court of Appeals iterated the following controlling principle:

> if a prosecutor has, or would clearly appear to a reasonable person having knowledge of the pertinent facts to have, any pecuniary interest or significant personal interest in a civil matter which may impair his obligation in a criminal matter to act impartially toward both the State and the accused, then he is, on the basis of this State's public policy, disqualified from initiating or participating in the prosecution of that criminal cause.

*Id.* at 254, 363 A.2d at 475. The Court further explained that, when a trial court fails to conduct an adequate inquiry into the alleged existence of a conflict of interest, an appropriate remedy, where the State's Attorney should have been disqualified and a conviction resulted, is reversal. *Id.* at 255, 363 A.2d at 475. We remanded the matter to the Circuit Court to hold a hearing to determine whether a conflict of interest existed. *Id.* at 260, 363 A.2d at 478. We stated that allegations of a prosecutor with an alleged pecuniary or significant personal interest in a civil case, that impaired his or her impartiality in the prosecution, compelled an appropriate hearing before the trial judge before deciding a motion to disqualify the prosecutor. Automatic, or per se, disqualification, however, was not compelled.

In *Lykins v. State,* 288 Md. 71, 415 A.2d 1113 (1980), Neal Myerberg, Esquire, prior to assuming the position of the State's Attorney for St. Mary's County and while in private practice, drafted a separation agreement for Ms. Lykins in a family law matter. Lykins asserted that the confidential information conveyed to Myerberg in the preparation of the separation agreement required his later disqualification in the State's prosecution of her for assault and battery with intent to murder a male friend. *Id.* at 73–74, 415 A.2d at 1115. At a hearing before the Circuit Court for St. Mary's County,

---

criminal conviction. *Sinclair,* 278 Md. at 259 n. 9, 363 A.2d at 477–78, n. 9.

Lykins and Myerberg testified to the extent of their prior attorney-client relationship. The trial court, without resolving whether Myerberg could recall any confidential information that Lykins may have communicated to him or whether such information would impact materially the current criminal prosecution, granted the motion to dismiss the indictment against Lykins, citing *Sinclair*. *Id.* at 77–78, 415 A.2d 1113, 415 A.2d at 1117–18. The Court of Special Appeals reversed and remanded to the Circuit Court for further proceedings, distinguishing *Sinclair*. *State v. Lykins,* 43 Md.App. 472, 474–75, 406 A.2d 289, 290 (1979).

While we agreed that the order dismissing the indictment should be reversed, we disagreed with the intermediate appellate court regarding the analysis of attorney disqualification issues and its interpretation of *Sinclair*. *Lykins,* 288 Md. at 84–85, 415 A.2d at 1121. We explained that the proper role of the trial court, in dealing with allegations that, in the course of a criminal prosecution, a prosecutor was motivated by an impermissible pecuniary interest or significant personal gain, was to exercise its discretion soundly after an appropriate hearing. We distinguished *Lykins* from *Sinclair*, we recognized that an impermissible pecuniary interest that may have impugned the impartiality of the State's Attorney's decision to maintain the prosecution was different from the more basic question Lykins presented—the possibility of a conflict of interest where the State's Attorney represented the defendant in a civil matter and then later sought that defendant's criminal prosecution. *Id.* at 81, 415 A.2d 1113, 415 A.2d at 1119. In determining whether to allow the continuation of the prosecution of the indictment in Lykins' case, we held that the trial judge must exercise his or her discretion in the following manner:

> [w]e hold that the proper action to be taken by a trial judge, when he encounters circumstances similar to those in the case at bar which he determines to be so grave as to adversely affect the administration of justice but which in no way suggest the bringing of a prosecution for improper motives (as was the case in *Sinclair*) is to supplant the prosecutor, not to bar the prosecution. Of course, a trial

judge may determine that the facts presented to him are not sufficiently grave to require even this action. *Normally, the evaluation of such circumstances is left to the sound discretion of the trial judge who is upon the scene and able to sense the nuances of that before him.*

*Id.* at 85, 415 A.2d at 1121 (emphasis added). Although we disagreed with the ultimate decision by the trial judge to dismiss the indictment, we observed that he exercised his discretion appropriately in disqualifying the prosecuting State's Attorney.

Three years later, in *Young v. State,* 297 Md. 286, 465 A.2d 1149 (1983), we held that the appropriate standard of review of the denial of a motion for vicarious disqualification of an entire prosecutor's office was abuse of discretion. Absent abuse, which could be demonstrated in one instance if the trial court failed to make an appropriate inquiry, we would not disturb the trial court's decision. *Id.* at 296–98, 465 A.2d at 1155.

*Lykins* and *Young* establish abuse of discretion as the standard of review and dispel any myth that may remain surrounding *Sinclair* and its application to the analysis of disqualification requests regarding a State's Attorney for alleged conflicts of interest created by past client representation. Moreover, we have commented that the trial judge is in a unique position to "sense the nuances" of the situation before him or her. *Lykins,* 288 Md. at 85, 415 A.2d at 1121. *Young,* although dealing with vicarious disqualification, reiterated that the question of disqualification, whether for a single attorney or an entire office, is one reviewed under an abuse of discretion standard.

Generally speaking, before concluding that a trial judge abused his or her discretion, we would need to agree that, "the decision under consideration [is] well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *Renbaum v. Custom Holding, Inc.,* 386 Md. 28, 43, 871 A.2d 554, 563 (2005) (citations omitted). The exercise of discretion ordinarily will not be disturbed by an appellate court. *Tierco Maryland, Inc. v. Williams,* 381 Md. 378, 413, 849 A.2d 504,

525 (2004) (quoting *Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51, 57, 612 A.2d 1294, 1297 (1992) (quoting *Mack v. State,* 300 Md. 583, 600, 479 A.2d 1344, 1352 (1984))).

## II.

Before considering Gatewood's substantive arguments, it is appropriate to review (and contextualize) prosecutorial disqualification situations generally and alleged specific conflicts of interest arising out of the representation of former clients by attorneys who later seek to prosecute those same clients on behalf of the State.

### A. Representation In the Same Case

■■ In situations where the current prosecutor previously defended a criminal defendant and later assumed the role as the prosecuting attorney in the same case, disqualification is required. When an attorney represents a criminal defendant, he or she likely receives a multitude of confidential communications regarding that case. Should that defense attorney later become the prosecuting attorney in the same criminal case, the likelihood of the existence and proximity in time of disclosure of those confidential communications justifies an overriding concern that to allow the prosecutor to continue would jeopardize the defendant's defense. Maryland Rule of Professional Conduct (MRPC) 1.7(a) supports this premise and states that "a lawyer shall not represent a client if the representation of that client will be directly adverse to another client...." MRPC 1.7 embodies the "general proposition [that] loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent." Comment, MRPC 1.7.[8]

■ In situations where a particular State's Attorney or Assistant State's Attorney is disqualified from prosecuting a defendant because he or she represented the defendant earlier

---

**8.** We note that there may be different considerations in situations where an attorney *consults* with a criminal defendant and where the attorney undertakes actual *representation* of that defendant. The latter triggers disqualification should that attorney later become a prosecutor

in the same case, vicarious disqualification of the entire staff of that State's Attorney's Office is not required, rather a discretionary decision by the trial judge, reached only after a hearing is required. *Young*, 297 Md. at 298, 465 A.2d at 1155. The mere appearance of impropriety, without more, is insufficient to disqualify an entire State's Attorney's office. *Id.*[9]

## B. Representation In a Substantially Related Prior Case

We have not addressed previously a motion for disqualification where the alleged conflict arose from subsequent representation in a substantially related case.[10]

---

in the same case. *Young*, 297 Md. at 287, 465 A.2d at 1150. The former may not, depending on the extent of the disclosure, if any, by the defendant of confidential communications to the attorney. Comment, MRPC 1.7. Other jurisdictions that have permitted a prosecutor to prosecute a defendant when the defendant alleges such a conflict do so on the grounds that the attorney involvement generally arose only to the level of consultation, not representation, and that no confidential information was divulged or could be brought to bear against the defendant. Allan L. Schwartz & Danny R. Veilleux, Annotation, *Disqualification of Prosecuting Attorney in State Criminal Case on Account of Relationship with Accused*, 42 A.L.R. 5th 581, 612, § 3[b] (1996 & Supp.2004).

9. Although not at issue in this case, where an elected State's Attorney is disqualified, additional considerations may come to bear in deciding whether other members of the office may maintain the prosecution. The other prosecutors in a State's Attorney's Office, as employees under the direct supervision of a constitutionally elected officer, as explained by the Court of Special Appeals, are "not a branch of the judiciary, nor is it directly subject to its supervision...." *State v. Lykins*, 43 Md.App. 472, 473–74, 406 A.2d 289, 290 (1979) (quoting *State v. Hunter*, 10 Md.App. 300, 305, 270 A.2d 343, 345 (1970), *cert. dismissed, Hunter v. State*, 263 Md. 17, 278 A.2d 608 (1971)) *judgment modified*, 288 Md. 71, 415 A.2d 1113 (1980). For example, in *Lykins*, Myerberg personally represented Lykins in a civil matter. After his election to the office of State's Attorney, he and his two assistants, who remained members of Myerberg's former law firm, sought to prosecute Lykins in the criminal case. 288 Md. at 73, 415 A.2d at 1115. In such a situation, where the entire State's Attorney's Office possessed the same stigma of attorney-client conflict, appointing a special prosecutor was the appropriate action. *Id.* at 85–86, 415 A.2d at 1121–22.

10. A substantially related case has been characterized as the same criminal incident, victims, or the same facts at issue. Schwartz & Veilleux, *supra*, § 3[a], n. 23.

Both *Sinclair* and *Lykins* were resolved under a calculus predicated on representation in prior civil matters. Nonetheless, *Sinclair* declared the broad legal principle that a prosecutor, with an alleged self-serving or pecuniary civil interest, may be disqualified because the pursuit of the prosecution improperly may serve that interest. *Sinclair*, 278 Md. at 254–55, 363 A.2d at 475. As we explained, *supra*, *Sinclair* is inapposite to situations where the issue is one of an attorney—former client conflict. In *Lykins*, we observed that a decision to disqualify a prosecutor was a discretionary one generally. We made no determination whether Myerberg's representation of Lykins in her separation agreement was a substantially related case to the later assault and intent to murder charges. *Lykins*, 288 Md. at 84–85, 415 A.2d at 1121.[11]

Until 1987, attorney-client conflicts were addressed primarily as questions of attorney ethics under the Maryland Code of Professional Responsibility. In 1986, this Court approved the Maryland Rules of Professional Conduct (MRPC), replacing the former Code of Professional Responsibility effective 1 January 1987. MRPC 1.9 had no direct predecessor within the former Disciplinary Rules of the Code of Professional Responsibility. Instead, MRPC 1.9 newly addressed the situation of a potential conflict between an attorney's representation of a current client with a former client's interests.

MRPC 1.9 states that a lawyer shall not "represent another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents after consultation...." MRPC 1.9(a). Subsequent representation of a position adverse to a former client is permissible. Com-

---

11. The Court of Special Appeals, albeit in dicta, considered an attorney disqualification request, perceiving disqualification unnecessary, where the prior representation by the attorney as defense counsel (a petty larceny conviction two years prior) was "totally unrelated" to the current prosecution for theft of a lawn mower. *Green v. State*, 49 Md.App. 1, 5, 430 A.2d 1122, 1124 (1981). Green's appeal regarding the refusal to disqualify the State's Attorney was rejected as a threshold matter because he failed to raise the issue at trial, in his motion for new trial, or at the time of sentencing. *Id.*

ment, MRPC 1.9. Thus, a public defender (or private practice criminal defense attorney) would not be precluded per se from prosecuting cases should he or she later join a State's Attorney's Office.[12]

The language of MRPC 1.9 commands an evaluation by the trial judge whether the current prosecution is substantially related to the former representation. "Substantially related" cannot mean merely the same facts, case, or victims because that would encompass a scenario where the prosecuting attorney would be handling the same case. Rather, "substantially related" embraces consideration of circumstances where the same issue is litigated, albeit for a different client, if there is a substantial risk that confidential communications between the attorney and his or her former client may be disclosed or utilized in a material manner prejudicial to the former client.

■ Of course, neither MRPC 1.9, nor any Maryland Rule of Professional Conduct, is the only factor a trial judge may consider in disposing of a motion to disqualify a prosecutor in an alleged conflict of interest situation. *See Sinclair,* 278 Md. at 259, 363 A.2d at 477. A motion to disqualify the prosecuting attorney must be examined in the context of the entire criminal trial, tempered with the nuances of timeliness, waiver, the Constitutional rights (if any are implicated) of the defendant, and the State's ability and duty to perform properly its prosecutorial function. Those issues are, in the first instance, committed to the trial judge "who is upon the scene" and can better "sense the nuances" before him or her. *Lykins,* 288 Md. at 85, 415 A.2d at 1121.

■ In terms of a criminal prosecution where the defendant moves to disqualify the prosecuting attorney because of an alleged prior representation, a trial judge must make a determination whether the prior representation was substantially related. The simplest form of this analysis may be

---

**12.** The Comment's analogy, that of permitting a military lawyer to be reassigned from defense to prosecutorial functions within the same military jurisdiction, is also apropos.

framed as whether the current prosecution is predicated on the prior representation. The analysis also must provide an extra measure of protection to the criminal defendant and inquire whether a relationship exists between the legal issues involved in the pertinent cases. The judge must decide whatever confidential information made available to the attorney in the course of the prior representation involving a substantially related legal issue is relevant and / or potentially admissible regarding the current prosecution.[13] The judge may do so by examining the nature and scope of the prior and past representations. *Buckley v. Airshield Corp.,* 908 F.Supp. 299, 304–305 (D.Md.1995) (interpreting and applying MRPC 1.9). If the confidential information (if any) will prejudice the defendant, then the judge may exercise his or her discretion to disqualify the prosecutor.

The result in *Lykins* would be the same if reviewed under the foregoing analytical template. In *Lykins,* the trial court did not find that the State's Attorney engaged in actual impropriety. *Lykins,* 288 Md. at 84, 415 A.2d at 1121. Rather, the trial judge stated that Myerberg was "in a position to acquire knowledge ... this would certainly put a cloud upon the Defendant's right if she decided to take the witness stand, it would certainly be a deterrent." *Id.* at 78, 415 A.2d at 1117. Having determined some relevance and / or prejudice to Lykins in her being cross-examined in her criminal prosecution for assault on a male friend by an attorney who, mere months before, drafted a separation agreement for her, the trial court exercised properly its discretion to disqualify the State's Attorney.

### III.

Having resolved the measured steps in the analysis which a trial judge must undertake, we turn now to the "handful of

---

**13.** We recognize the pitfall for the criminal defendant—in proving that confidential information conveyed during a prior representation may be relevant and harmful to the defense in the present case—because it may force the defendant to "remind" the State's Attorney of the information he or she may have forgotten.

peas" slung "against a window pane" that make up the sub-
stance of Gatewood's specific substantive arguments. *See*
George Bernard Shaw, *Arms and the Man*, 17 (Penguin
Books, 1952).[14]

Gatewood first alleges that the mere appearance of impro-
priety is sufficient to compel the trial judge to disqualify the
State's Attorney, relying upon language in *Lykins* and foreign
cases for support. The trial court in *Lykins* referred to the
appearance of impropriety in Myerberg's prosecution of his
former client. The appearance of impropriety, whether
viewed from the internal vantage of the legal profession or the
scrutiny of the public eye, is an important consideration that a
judge may take into account in the exercise of his or her
discretion. We did not establish, however, a *per se* rule
requiring disqualification once an appearance of impropriety is
believed to exist. *Lykins*, 288 Md. at 84–85, 415 A.2d at 1121–
22. Our decision in *Young* reflects our continuing reluctance
to require disqualification when merely an appearance of

---

**14.** The offered simile finds its inspiration in the following passage from
*Arms and the Man:*

[CAPTAIN BLUNTSCHLI]: Well, come! is it professional to throw a
regiment of cavalry on a battery of machine guns, with the dead
certainty that if the guns go off not a horse or man will ever get within
fifty yards of the fire? I couldn't believe my eyes when I saw it.

[RAINA]: Did you see the great cavalry charge? Oh, tell me about it.
Describe it to me.

[BLUNTSCHLI]: You never saw a cavalry charge, did you?

[RAINA]: How could I?

[BLUNTSCHLI]: Ah, perhaps not. No: of course not! Well, it's a
funny sight. It's like slinging a handful of peas against a window pane:
first one comes; than two or three close behind him; and then all the
rest in a lump.

[RAINA]: Yes, first One! the bravest of the brave!

[BLUNTSCHLI]: Hm! you should see the poor devil pulling at his
horse.

[RAINA]: Why should he pull at his horse?

[BLUNTSCHLI]: It's running away with him, of course: do you
suppose the fellow wants to get there before the others and be killed?
Then they all come. You can tell the young ones by their wildness and
their slashing. The old ones come bunched up under the number one
guard: they know that [they are] mere projectiles, and that it's no use
trying to fight.

Shaw, *supra*, 17–18.

impropriety is shown to exist. *Young*, 297 Md. at 298, 465 A.2d at 1155.

As stated, *supra*, merely participating in the prosecution of a former client, standing alone, is not enough to justify disqualification. Only after a measured calculation reveals that 1) confidential information was divulged, 2) relevant to the current prosecution, 3) that is materially adverse to that defendant, may the trial judge exercise his or her discretion properly in disqualifying a prosecutor.

In the present case, the trial judge engaged in the proper analysis, albeit without explicating his findings in terms of the magic words "substantially related." *See South Easton Neighborhood Assoc. v. Town of Easton*, 387 Md. 468, 495–96, 876 A.2d 58, 74–75 (2005) (formalistic adherence to a legal standard is not required generally when "actual consideration of the necessary legal considerations are apparent in the record") (citations omitted). The trial judge weighed the proffer as to two prior representations [15] four years prior, concerning a burglary charge and a conspiracy to possess CDS charge, against their relevance to the current prosecution for possession and distribution of CDS. The prior convictions, even if used for impeachment (which they were not), were a matter of the public record. The judge queried the State's Attorney if there was any confidential information from those prior cases that he could recall that could be brought to bear upon the defendant in the instant prosecution. The State's Attorney responded in the negative.[16] The Circuit Court, after weighing the information received in the bench conferences and finding neither prejudice to the defendant

---

**15.** Counter to Gatewood's proffer, Eastridge expressed no recollection of his alleged representation on those charges. The trial judge did not resolve expressly this conflict. Instead he appeared to assume the prior representation occurred in resolving Gatewood's motion to disqualify the State's Attorney.

**16.** During Eastridge's cross-examination of Gatewood, no confidential information from the prior representation apparently was revealed or utilized.

from Eastridge's prosecution nor a close relation between the present case and the past representations, properly exercised his discretion to reject the motion to disqualify.

Gatewood also urges us to resolve this matter in his favor by applying the rule in *In re Ockrassa*, 165 Ariz. 576, 799 P.2d 1350 (1990) and *State v. Laughlin*, 232 Kan. 110, 652 P.2d 690 (1982). We find that *In re Ockrassa*, an attorney discipline case, is unpersuasive in resolving a trial court's decision analyzed under an abuse of discretion standard. *Laughlin* actually supports the State's position more than Gatewood's.

In *In re Ockrassa*, the Arizona Supreme Court held that Ockrassa violated Arizona Ethical Rule 1.9 (ER 1.9), which is identical to MRPC 1.9. Ockrassa, as a public defender in 1982 and 1983, represented a criminal defendant in three driving under the influence (DUI) cases. In 1986, while employed as a deputy prosecutor, Ockrassa was assigned to prosecute the same person as a criminal defendant, charged as a third-time repeat DUI offender. At that trial, the public defender representing the defendant noted the potential for conflict. The trial court denied relief, but suggested that if the public defender perceived a violation of the Arizona Rules of Professional Conduct in Ockrassa's role as prosecutor, then he had an obligation to report that violation to the State Bar. *Ockrassa*, 799 P.2d at 1350–51. The public defender followed through.

The Arizona Supreme Court, in considering the ensuing ethics complaint, applied a somewhat tortured "substantially related" analysis to determine if Ockrassa indeed violated ER 1.9. The court first held that the two prior DUI convictions were directly in issue in the prosecution for the repeat offender charge and therefore substantially related to Ockrassa's former representation of the defendant. *Id.* at 1352.[17] The court also stated, "[w]e do not believe that, in the context of multiple DUI offenses, a 'substantial relationship' is estab-

---

17. The defendant also disclosed his intent to contest the validity and sufficiency of the prior convictions. *Ockrassa*, 799 P.2d at 1352.

lished only if the prior conviction is an element of the subsequent offense." *Id.* The Arizona Supreme Court, however, declined to decide whether Ockrassa's prior representation created an irrebuttable presumption that confidential information was conveyed to Ockrassa by the client. The court observed that an opinion of the State Bar Committee on the Rules of Professional Conduct recognized that this presumption ought to exist. *Id.*

Searching for a link to tie Ockrassa and his representation of the defendant in the prior DUI representations to the current prosecution, the court looked to the following language from the ER 1.9 official Comments (also identical to the Comment to MRPC 1.9):

> [A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

*Id.* Despite proclaiming that the "context of multiple DUI offenses" by itself did not create a substantial relationship, the court discovered one because "the nature of the DUI offense, with its exponential punishment for multiple offenses, makes [Okrassa's] conduct more akin to 'switching sides' than had the subsequent prosecution involved, for example, forgery." *Id.* at 1353. Nonetheless, the Arizona Supreme Court offered no direct comment regarding the appropriateness of the trial judge permitting Okrassa to prosecute his former client.

In *State v. Laughlin,* the Kansas Supreme Court addressed whether an entire district attorney's office should be disqualified vicariously from prosecuting a defendant for rape because the district attorney, while practicing elsewhere, previously

defended the same defendant against burglary and attempted rape charges three years earlier. *Laughlin*, 652 P.2d at 691. In concluding that vicarious disqualification was not appropriate, the Kansas Supreme Court enunciated the following:

> [A] prosecuting attorney cannot be permitted to participate in a criminal case if by reason of his professional relations with the accused he has acquired any knowledge of the facts upon which the prosecution is predicated, or which are closely related thereto. On the other hand, the cases clearly recognize that there is no such bar to a prosecuting attorney's participation in a criminal case where the evidence fails to establish the existence of those factors assumed by the general rule and upon which its operation necessarily depends.

*Id.* at 692. The determination of whether a conflict of interest actually existed, thereby compelling disqualification, lay "within the sound discretion of the trial court." *Id.* at 693 (citing *In re Estate of Richard*, 4 Kan.App.2d 26, 602 P.2d 122 (1979)).

Continuing to look for succor elsewhere, Gatewood turns next to an advisory opinion of the Maryland State Bar Association's Committee on Ethics (MSBA Ethics Committee). He contends that an MSBA Ethics Committee opinion, entitled "Conflict of interest: Assistant Public Defender in County resigning to accept position as Deputy State's Attorney in same county," supports his motion for disqualification.

In Docket 95–30 (1995), the MSBA Ethics Committee published an opinion hoping to resolve an inquiry by a former public defender who accepted a position as a Deputy State's Attorney.[18] In summarizing the considerations for disqualifi-

---

18. Prior to publishing its advisory opinion, the Ethics Committee advised the Deputy State's Attorney not to prosecute any cases where he or she appeared previously as counsel as a public defender and not to prosecute or provide counsel in any prosecution involving a former client where any special knowledge previously obtained in the earlier cases may be used adversely against the former client.

The Public Defender's Office for the pertinent county also contacted the ethics hotline about the situation, speaking to an attorney who was not the author of the written opinion. That attorney advised the Public

cation of an individual prosecutor (and without citing an opinion of this Court), the Ethics Committee opined that the newly-hired Deputy State's Attorney was prohibited from "participating in any matter in which your prior activities have made you privy to confidential information that you would be called upon to use against your former client." *Id.* at 4. As explained in our discussion of *Sinclair* and *Ockrassa*, however, a violation of the Maryland Rules of Professional Conduct, if one as advised by the MSBA Ethics Committee may occur, is not enough by itself to justify the reversal of a criminal conviction.

Gatewood specifically asserts that the "intimate knowledge" Eastridge gained as his public defender some four years earlier colored more in the present prosecution than his cross-examination of Gatewood. He alleges that this intimate knowledge would affect "how the prosecutor views: plea bargaining; the recommended sentence; the defendant's strength as a witness; the defendant's credibility; and the seriousness of the latest offense." Furthermore, Gatewood claims that the State's Attorney's sentencing recommendation of three consecutively-served, unsuspended ten year prison terms reflects an impermissible use of intimate knowledge.

We fail to find any evidence in this record that such an impermissible use existed. There are no examples, preserved by objection or otherwise, of bias on the part of the State's Attorney, traceable to knowledge or experience gained from a prior representation regarding plea bargains, witness credibility, or otherwise.

The only colorable argument in Gatewood's barrage is the matter of the sentence recommendation. The State's Attorney's recommendation for sentencing, however,

Defender's Office that the Deputy State's Attorney could not prosecute any individual that he or she had represented previously, regardless of whether the "new matter is wholly unrelated to the previous representation." MSBA Ethics Committee, No. 95–30, 2 (1995). The Ethics Committee, however, recanted this oral advice, stating "the tentative views expressed in the phone call were not completely accurate or consistent with the Rules of Professional Conduct." *Id.* at 2 n. 1.

reflects impartiality towards Gatewood. First, the State's Attorney did not seek prosecution under the repeat offender provision found in then-Article 27, § 293 of the Maryland Code (permitting a fine and imprisonment for repeat offenders for a term of years twice that for first time offenders).[19] Although the trial court characterized the sentencing range of thirty-six to sixty years recommended by the sentencing guideline worksheet proffered by the State's Attorney as "high," the recommendation was based on an appropriate offender score.[20] The mere appearance of a "high" sentencing

19. This statute was repealed and codified at § 5–905 of the Criminal Law Article. 2002 Md. Laws, Cap. 26.

20. The Maryland sentencing guidelines were created with four chief goals, which are: 1) to increase equity in sentencing by reducing unwarranted sentence disparity while retaining judicial discretion for individual sentences; 2) to articulate an explicit sentencing policy; 3) to provide baseline information for new judges; and 4) to promote increased public visibility and understanding of the sentencing process. Maryland State Commission on Criminal Sentencing Policy, *Maryland Sentencing Guidelines Manual*, 1 (2005). The guidelines are voluntary. Md.Code (2001), § 6–211 of the Criminal Procedure Article. One intended use of the guidelines is to prioritize the use of correctional facilities for the confinement of violent and career criminals, as well as allowing trial judges the ability to include various corrections options programs for appropriate criminals. Md.Code (2001), § 6–202 of the Criminal Procedure Article.

The offender score for a CDS conviction consists of four components. The maximum score is nine; the minimum is zero. The components and their scoring values are: 1) whether the defendant is under the supervision of the criminal justice system (1 point if involved); 2) the extent of the defendant's involvement with the juvenile justice system (0–2 points); 3) the defendant's prior criminal record (0 points for none to 5 points for major); and 4) had the defendant been found in prior violation of probation or parole (1 point if violation occurred before the current conviction). Once an offender score is calculated, that number is used with the offense seriousness category score for that particular conviction in a sentencing matrix to produce a recommended sentence. When multiple offenses occur, the guideline maximum and minimum sentences are summed.

In Gatewood's case, his total offender score was seven, the largest component of which was five points assigned because he was an adult with a prior major criminal record. He had at least eleven prior convictions listed in the pre-sentencing report prepared by the State's Attorney's Office in December 2000, before Eastridge was sworn in as State's Attorney for Cecil County. His three current convictions under

range, without more, does not support adequately Gatewood's contention that the State's Attorney's recommended sentence was unduly harsh because of intimate knowledge gained from his prior representation of Gatewood. Rather, the knowledge of Gatewood's prior criminal record, which merited a "5" on the sentencing guideline worksheet as a prior adult criminal offender, contributed most significantly to the State's recommendation.[21]

---

§ 286 of Article 27 of the Maryland Code qualified as Category III convictions. These yielded a recommended sentence of 12 years as a minimum and 20 years as a maximum for each conviction and a total sentencing range of 36 to 60 years—less than the State's Attorney's recommendation of three ten-year sentences.

The trial judge reviewed the pre-sentence report and noted that, "Mr. Gatewood's criminal history is not good. It's rather lengthy. It's varied .... different crimes, theft, burglary, [e]luding a police officer, assault, drug distribution. That's why the offender score is so high." The judge's comment of a "high" sentencing range reflects merely the appropriateness of his discretion to levy an individual sentence considering Gatewood's specific circumstances and not a reflection of Eastridge's alleged bias toward Gatewood. *See Roary v. State*, 385 Md. 217, 248, 867 A.2d 1095, 1113 (2005) (holding judge exercised discretion properly in sentencing defendant to a term of years longer than his co-conspirators because the defendant refused to testify against those co-conspirators). The intent of the guidelines reflect that they "complement rather than replace the judicial decision-making process or the proper exercise of judicial discretion." *Jennings v. State*, 339 Md. 675, 680 n. 1, 664 A.2d 903, 905 n. 1 (1995) (quoting *Teasley v. State*, 298 Md. 364, 367, 470 A.2d 337, 338 (1984)) (citations omitted). The judge's eventual sentence reflects the "broad latitude" of information he considered in assessing Gatewood's sentence. *Jennings*, 339 Md. at 683, 664 A.2d at 907 (citations omitted). The judge's comments, "[b]ecause of his long criminal history and the fact that he's not done well on probation, nor has he done well on parole, makes it even more serious and difficult to deal with, trying to fashion a sentence that's appropriate," evince exercise of this latitude. In this case, the trial judge noted on the sentencing guideline worksheet that Gatewood was a "low level dealer" as the reason for sentencing Gatewood to a term of years less than the maximum sentencing guidelines suggested.

21. Not squarely before us is the issue of whether Gatewood waived his claim for disqualification of the State's Attorney when he failed to note his motion before the jury was sworn for voir dire. Gatewood had ample opportunity, assuming his claim had merit, to move to disqualify the State's Attorney before the swearing for voir dire of the jury. On 20 December 2002, then-State's Attorney for Cecil County John L. Scarborough represented the State at a pre-trial motion to suppress evi-

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; PETITIONER TO PAY COSTS.*

Dissenting Opinion by BATTAGLIA, J. which BELL, C.J., joins.

I respectfully dissent.

In this case we have been asked to decide whether the trial judge was required to disqualify the State's Attorney [1] who, while employed as an Assistant Public Defender, previously had represented the defendant in two criminal cases unrelated to the present case. The majority here affirms the trial court's ruling and holds that,

---

dence. At trial, however, Eastridge was the State's Attorney for Cecil County, having been duly elected in the election of November 2002. The record reveals that it should have come as no surprise to Gatewood that Eastridge would be the prosecuting attorney because Gatewood prepared, before trial began, voir dire questions regarding whether any prospective juror voted for Eastridge in the recent election. Gatewood brought attention to the following prior to voir dire:

> [PUBLIC DEFENDER]: I guess I had one other discussion in the situation with Mr. Gatewood. He brought to my attention—I did not include this in my voir dire. He would like—I think it might be pertinent to ask—that is whether any of the members of the panel voted for Mr. Eastridge in the recent election.

Furthermore, the record reflects that Gatewood had opportunities before voir dire began to move to disqualify Eastridge: Gatewood was seated adjacent to Eastridge in the courtroom while arguing (before voir dire) his motions to postpone the trial so that he could obtain new counsel, to strike the appearance of the public defender assigned to him, a waiver of representation, a withdrawal of the motion to strike the appearance of the public defender, and allowance of the public defender to re-enter his appearance.

If a waiver occurred and were Gatewood to discover additional evidence that indicated an actual conflict on Eastridge's part (which the present record does not), Gatewood yet may seek relief under the Maryland Uniform Postconviction Procedure Art. Md.Code (2001), §§ 7-101-7-109 of the Criminal Procedure Article.

1. As the majority notes in its footnote 1, the Court of Special Appeals's opinion in this case and the Petitioner's brief in this Court refer to Eastridge as an Assistant State's Attorney. The Respondent's brief refers to Eastridge as the State's Attorney for Cecil County. I also will refer to Eastridge as the State's Attorney throughout this dissent.

[w]here the potential conflict of interest with a former client in a criminal case arises out of a substantially unrelated charge (although similar to the current ones for which the former client was being tried), and the trial court makes an appropriate inquiry into potential prejudice to the defendant in the current prosecution from the risk of disclosure of any confidential information that may have been imparted during the previous representation, but finds none, the court is not compelled to disqualify the prosecutor.

Maj. op. at 532, 880 A.2d at 325. I depart from the majority, however, because I do not believe that the trial judge's decision to disqualify the State's Attorney was discretionary.

The majority confuses and conflates the standards to be applied when a conflict of interest is alleged and thereafter, when the sanction arising from the conflict is determined, i.e., either the indictment should be dismissed and the prosecution barred or the State's Attorney should be disqualified. When, as here, the State's Attorney had a conflict of interest because of his personal representation of the defendant in another criminal case, we utilize a *de novo* standard to assess whether the trial judge correctly evaluated the allegations of conflict of interest on the part of the State's Attorney, and then, apply an abuse of discretion standard to determine whether the sanction imposed was appropriate.

In *Sinclair v. State,* 278 Md. 243, 363 A.2d 468 (1976), this Court considered whether the State's Attorney could "initiate or participate in a prosecution when he ha[d] a conflicting private interest in a civil matter." *Id.* at 244, 363 A.2d at 469–70. We held that "unresolved nonfrivolous allegations of specific prosecutorial conflicts of interest," mandated a remand to the trial court to determine if the defendant's conviction should be overturned, as well as whether the Information filed against him was valid, without regard to proof of actual prejudice to the defendant. *Id.* at 255 n. 8, 260, 363 A.2d at 475 n. 8, 478 (noting, "We, unlike the trial court in this case ... conclude that the defendant need not prove actual prejudice because, on the basis of public policy, it will be presumed to exist as a matter of law."). In reaching this result, Judge

Dudley Digges, writing for the Court, relied upon *Derlin v. Derlin*, 142 Md. 352, 364, 121 A. 27, 31 (1923):

"An attorney at law who has once been retained and received the confidence of a client, is thereafter disqualified from acting for any other person adversely interested in the same general matter, however slight such adverse interest may be. Nor does it matter that the intention and motive of the attorney are honest. *This rule is a rigid one, and designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent.*"

*Sinclair*, 278 Md. at 253–54, 363 A.2d at 474–75 (internal citation omitted) (emphasis added).

The *Sinclair* Court recognized a pivotal principle of our criminal justice system, that the functions of a State's Attorney are so essential to the fair and equal administration of justice that he or she must be, or *appear* to be, impartial in the exercise of his or her duty. The conflict of interest in *Sinclair* was so important that the possibility of a contaminating influence on the prosecution subjected an elected State's Attorney to scrutiny, which would have resulted in a disqualification of his whole office.

The importance of avoiding a conflict of interest was reinforced in *Lykins v. State*, 288 Md. 71, 415 A.2d 1113 (1980), in which an attorney who had represented the defendant in a civil matter later became the State's Attorney who presented evidence against the defendant to a grand jury that returned an indictment. *Id.* at 72, 415 A.2d at 1114. In *Lykins*, the issue was not whether a conflict of interest existed or if the trial judge had committed error in his determination that there was a conflict of interest. Rather, the only issue was whether the indictment should be dismissed in lieu of supplanting the prosecutor.

In our review of the record, this Court accepted the trial court's determination that the circumstances were so grave as to adversely affect the administration justice. *Id.* at 84, 415 A.2d at 1121. In so doing, we held that:

> the proper action to be taken by a trial judge, when he encounters circumstances similar to those in the case at bar which he determines to be so grave as to adversely affect the administration of justice but which in no way suggest the bringing of a prosecution for improper motives (as was the case in Sinclair), is to supplant the prosecutor, not to bar the prosecution. Of course, a trial judge may determine that the facts presented to him are not sufficiently grave to require even this action. Normally, the evaluation of such circumstances is left to the sound discretion of the trial judge who is upon the scene and able to sense the nuances of that before him. Ordinarily an appellate court will not interfere with his conclusion as to the proper course of action to be followed in the absence of a showing of an abuse of discretion upon the part of the trial judge.

*Id.* at 85, 415 A.2d at 1121. In *Lykins*, it is noteworthy that the State's Attorney testified that he did not remember if confidential information had been disclosed during his prior representation of the defendant. *Id.* at 74–75, 415 A.2d at 1115–16.

The majority in this case, however, commingles the standards used in the determination of a conflict of interest and its appropriate sanction into one standard and relies on *Young v. State,* 297 Md. 286, 465 A.2d 1149 (1983), for the proposition that *"Young* reflects our continuing reluctance to require disqualification when merely an appearance of impropriety is shown to exist." Maj. op. at 546–47, 880 A.2d at 334. In *Young,* the only issue was "whether all of the prosecutors in a county State's Attorney's office [were] disqualified from prosecuting a defendant in a criminal case [where] one of their number, prior to appointment as an Assistant State's Attorney, acted as counsel to the defendant." *Young,* 297 Md. at 287, 465 A.2d at 1150. Relying on the decisions in *Sinclair*

and *Lykins*, this Court determined that the whole State's Attorney's Office need not be disqualified:

> We think it clear from the rationale of *Sinclair* and *Lykins* that *the mere appearance of impropriety is not of itself sufficient to warrant disqualification of an entire State's Attorney's office, based upon one member's prior representation of a defendant presently under prosecution.* Where disqualification is sought, the trial court must make inquiry as to whether the defendant's former counsel participated in the prosecution of the case or divulged any confidential information to other prosecutors.

*Id.* at 298, 465 A.2d at 1155 (emphasis added). The issue in *Young*, as in the earlier cases, was not whether a conflict of interest existed on the part of the former defense attorney turned prosecutor, but whether that conflict could be imputed to another member of the office, absent actual communication, so that there was an *appearance* of a conflict. The seminal distinction between *Sinclair* and *Lykins*, on the one hand, and *Young*, on the other is that the State's Attorney was the actor in *Sinclair* and *Lykins* while an Assistant State's Attorney was subject to scrutiny in *Young*, which dealt solely with disqualification of the entire office, when the conflicted Assistant had not communicated any information about his prior representation to his colleagues. Therefore, disqualification of an entire State's Attorney Office would not necessarily be required when an *appearance* of impropriety was involved.

Clearly, *Young* does not stand for the proposition that the appearance of impropriety, alone, is insufficient to warrant disqualification of a State's Attorney. To the contrary, our precedent unequivocally establishes that when a State's Attorney in a criminal matter has a conflict of interest resulting from his or her prior representation of an accused, the conflict that is created is sufficient, in and of itself, to warrant disqualification; the only issue that remains is whether the indictment also must be dismissed or the entire office supplanted. *Lykins*, 288 Md. at 84–85, 415 A.2d at 1121; *Sinclair*, 278 Md. at 254, 363 A.2d at 475. Actual prejudice to the

defendant is not required—thus a *per se* rule is effected. *Sinclair,* 278 Md. at 255 n. 8, 363 A.2d at 475 n. 8.

In the case *sub judice,* the record is clear that the State's Attorney had a conflict of interest and should have been disqualified from prosecuting the defendant. During the bench conference on the motion, the State's Attorney stated that he did "remember Mr. Gatewood from the [Public Defender's] Office." Counsel for the defense confirmed through electronic records at the Public Defender's Office that the State's Attorney, in fact, had represented the defendant on two cases in 1998—a burglary charge that resulted in a nolle prosequi and a conspiracy to possess a controlled dangerous substance (CDS) that was resolved by a guilty plea. Armed with such knowledge, the judge, nonetheless, did not limit the State's Attorney from impeaching the defendant with his prior convictions even though the State's Attorney so limited himself during cross-examination of the defendant.

In addition, and as the majority concedes, "the knowledge of Gatewood's prior criminal record, which merited a '5' on the sentencing guideline worksheet as a prior adult criminal offender, contributed most significantly to the State's [sentencing] recommendation," Maj. op. at 553, 880 A.2d at 338, which undoubtedly included the prior CDS conviction. In fact, during the sentencing hearing, the State's Attorney stated in support of the sentencing recommendation: "looking at the presentence report, I note that not even counting the robbery second degree conviction in Delaware, which Mr. Gatewood has disputed, he has at least eleven prior criminal convictions otherwise." In response, the trial judge remarked: "Mr. Gatewood's criminal history is not good, It's rather lengthy. It's varied. The pre-sentence investigation reveals that—the different crimes, theft, burglary, alluding a police officer, assault, drug distribution. That's why the offender score is so high." [2]

---

**2.** Moreover, the judge did not scrutinize whether the State's Attorney was involved in the presentation of the current charges to a grand jury; in various of Maryland's counties, individuals in private practice also may have served as prosecutors.

The issue is never whether the prosecutor remembers the vagaries of representing a defendant or if the defendant is actually prejudiced by the conflict of interest. In this case, the conflict of interest exists and we should not countenance it. Under the circumstances, I would reverse the conviction and remand the case to the trial court for a new trial with a different prosecutor.[3] The integrity of the judicial process demands it.

Chief Judge BELL has authorized me to state that he joins in this dissent.

---

Whether the prosecutor, with knowledge as the former defense attorney to the defendant, presented the case to a grand jury was suggested as legitimate inquiry by this Court in *Lykins* to determine that a conflict of interest was present. *See Lykins*, 288 Md. at 79, 415 A.2d at 1118, quoting Judge Dudley Digges in *Sinclair*:

These decisions seem to suggest what we think is the controlling principle of this case: if a prosecutor has, or would clearly appear to a reasonable person having knowledge of the pertinent facts to have, any pecuniary interest or a significant personal interest in a civil matter which may impair his obligation in a criminal matter to act impartially toward both the State and the accused, then he is, on the basis of this State's public policy, disqualified from initiating or participating in the prosecution of that criminal cause. The corollary to this principle is that if a prosecutor who should have been disqualified is involved in his official capacity in the bringing of charges (by way of indictment or information) against the defendant, then upon timely objection the charges will be dismissed, or if such a prosecutor participates in his official capacity in the prosecution of the case, then upon timely objection any resulting conviction will be reversed and a new trial ordered.

3. Whether another member of the State's Attorney's Office could prosecute the case or if a special prosecutor should be appointed was not explored, but would need to be.